UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

New England Wood
Pellet, LLC

     v.                                    Civil No. 09-cv-123-JL
                                                Opinion No. 2009 DNH 165
New England Pellet,
LLC, Jason Tynan, and
Steven Zaczynski


**O R D E R**

This case comes before the court on a motion to remand and a
cross-motion to transfer.  Plaintiff New England Wood Pellet, LLC
("NEWP") sued defendant New England Pellet, LLC ("NEP") and two
of its principals in Cheshire County Superior Court, asserting
claims that, according to the complaint, "arise[] out of a
reseller relationship" between the companies.  Within one month,
however, NEP had filed for Chapter 11 bankruptcy protection in
the Bankruptcy Court for the District of Connecticut, where it
has its principal place of business.  In re New Eng. Pellet, LLC,
No. 09-20030 (Bankr. D. Conn. Jan. 8, 2009).  The defendants
subsequently removed NEWP's lawsuit to this court, invoking its
"original but not exclusive jurisdiction of all civil proceedings
arising under title 11, or arising in or related to cases under
title 11."  28 U.S.C. § 1334(b).

NEWP then moved to remand, arguing that, first, this court
lacks original jurisdiction under § 1334(b) and, second, even if

jurisdiction exists, this court should nevertheless remand the case on equitable grounds under 28 U.S.C. § 1452(b) or decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) as to the claims against NEP's principals.  The defendants responded by objecting to NEWP's motion and making their own cross-motion to transfer the case to the United States District Court for the District of Connecticut under 28 U.S.C. §§ 1404(a) or 1412.[1]  For the reasons set forth below, the court denies the motion to remand and grants the motion to transfer.

## I.   __Applicable legal standard__

"[A] motion to remand a case back to state court following its removal to federal court involves a question of subject-matter jurisdiction . . . .  In the course of this inquiry, the removing party bears the burden of persuasion."  BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers, 132 F.3d 824, 830-31 (1st Cir. 1997).  The court must decide NEWP's remand motion before deciding the defendants' transfer motion, because "'[t]ransfer . . . is possible only if venue is proper in the [transferor] forum and federal jurisdiction existed there.  If subject matter jurisdiction is lacking, there is no power to do

---

[1]As discussed infra Part III.A, NEP's position as to the remand is a matter of dispute.  To avoid confusion, the court refers to NEP and its principals collectively as "the defendants."

anything with the case except dismiss' or remand it." Marotta
Gund Budd & Dzera LLC v. Costa, 340 B.R. 661, 663 n.2 (D.N.H.
2006) (quoting 15 Charles Alan Wright et al., Federal Practice &
Procedure § 3844, at 332 (2d ed. 1984 & 2005 supp.)).[2]

Where, as here, a subject-matter jurisdiction challenge
comes at the pleadings stage, a court may consider the
allegations in the pleadings as well as any other materials
before it. See Aguilar v. ICE, 510 F.3d 1, 8 (1st Cir. 2007);
14C Wright, supra, § 3739, at 834-35 (4th ed. 2009) ("whether an
action should be remanded to state court must be resolved by the
district court with reference to the complaint, the notice of
removal, and the state court record at the time the notice of
removal was filed") (footnote omitted). The court may also take
judicial notice of developments in other courts, see, e.g.,
Aguilar, 510 F.3d at 8 n.1; Marotta, 340 B.R. at 663 n.3, such as

---

[2]It does not necessarily follow that, once a court decides
it has subject-matter jurisdiction under § 1334, it must decide
whether to remand the case on equitable grounds under § 1452(b)
before deciding whether to transfer it. Indeed, that issue has
divided the courts. See, e.g., Rayonier Wood Prods., L.L.C. v.
Scanware, Inc. (In re Scanware, Inc.), 411 B.R. 889, 895-97
(Bankr. S.D. Ga. 2009) (discussing divergent authority). In
these circumstances, however, this court must tackle equitable
remand first, to avoid potentially transferring the case to a
court--the United States District Court for the District of
Connecticut--which would lack the authority to remand it to the
New Hampshire Superior Court, in a different state, even if
remand were proper. See 14C Wright, supra, § 3739, at 839-40.

other actions between the same parties and NEP's bankruptcy proceeding.  The following facts are drawn from those materials.

## II.  **Background**

NEWP, a limited liability company with its principal place of business in Jaffrey, New Hampshire, manufactures and sells wood pellets for burning in wood stoves and the like as a source of heat.  NEP, a limited liability company with its principal place of business in Enfield, Connecticut, operated as a distributor of wood pellets from the time of its formation in early 2007 to the time of its bankruptcy in early 2009.  NEP was founded by defendant Stephen Zaczynsksi who, even before that time, had been buying wood pellets from NEWP and reselling them to consumers and other dealers in Connecticut and Massachusetts. As Zaczynski's business grew, he obtained necessary capital from an acquaintance, defendant Jason Tynan.  Upon NEP's formation, Zaczynski, who resides in Suffield, Connecticut, and Tynan, who resides in Longmeadow, Massachusetts, became its only members.

NEP then approached NEWP with a proposal to become the exclusive distributor of its wood pellets in New Jersey and parts of New York, resulting in a written reseller agreement between the parties dated January 2008.  While neither side has provided the court with a copy of the agreement, NEWP alleges that it authorized NEP to act as the exclusive reseller of NEWP's premium

4

brand pellets in New Jersey and certain counties in New York, but prohibited NEP from selling those premium pellets elsewhere. NEWP also alleges that the reseller agreement did not apply to its non-premium brand pellets, which NEP remained free to sell anywhere, though the agreement did require NEP to sell at least 10,000 tons of pellets total (including a certain non-premium brand) to retain its status as an exclusive distributor.

The defendants claim that, apart from this agreement, NEWP further promised to provide NEP between 5,000 and 7,000 tons of pellets to sell in Massachusetts and Connecticut and that, in reliance on this promise, NEP "presold" some 4,000 tons of pellets to its customers in those states, i.e., accepted payment for product NEP did not yet have in stock.  NEWP acknowledges having "told NEP it thought it would be able to supply 8,000-10,000 tons of pellets," but maintains that it "never made a firm commitment" because the parties "never reached agreement on a set price for a given quantity."  NEWP also alleges that it cautioned its resellers, NEP included, "that it was likely that NEWP would be unable to meet all of the demand" so that "they should avoid 'preselling' inventory."

In any event, NEWP informed NEP in June 2008 that NEWP would provide only 2,500 tons of non-premium pellets.  While NEWP blames this on "an unprecedented and unanticipated increase in demand" for wood pellets caused by a sharp rise in the price of

oil, the defendants complain that "NEWP had no difficulty in providing pellets to others" and that its operations manager "bragged" of continuing to sell large quantities of pellets into July.  The defendants also claim that NEWP offered NEP additional non-premium pellets to sell in Massachusetts and Connecticut in exchange for relinquishing its exclusive rights to sell premium pellets in New Jersey and New York, which would have enabled NEWP to take direct advantage of rapidly rising pellet prices in that region.  The defendants refused to assent to this deal, which they call "commercial blackmail."  Eventually, in October 2008, NEWP declared NEP in default of the reseller agreement for, inter alia, allegedly selling premium-brand pellets outside of NEP's exclusive geographic area.

For its part, NEWP alleges (with apparent help from a thesaurus) that it was NEP who "made repeated efforts to persuade, cajole, browbeat, threaten, and otherwise coerce NEWP" into providing more non-premium pellets.  These alleged efforts included withholding payment to NEWP for some $396,195 in pellets that had already been delivered to NEP.  In any event, NEP did not succeed in obtaining enough pellets to make good on its commitments to its customers, resulting in consumer complaints to the Attorneys General of Massachusetts and Connecticut.  They, in turn, brought civil suits against NEP and its principals for

violating applicable state consumer protection statutes.[3]  NEWP
also filed three of its own near-simultaneous lawsuits against
NEP and its principals in state courts in Connecticut,
Massachusetts, and New Hampshire (the instant action).[4]

This lawsuit (like NEWP's Connecticut and Massachusetts
actions) asserts a number of claims against NEP.  First, NEWP
alleges that NEP breached the reseller agreement in a number of
ways, including by refusing to pay for the pellets already
received, and therefore seeks a declaratory judgment that NEWP
has legitimately terminated the agreement, as well as monetary
damages in breach of contract for the unpaid $396,195 (counts 1
and 3).  Second, NEWP claims that NEP has engaged in violations
of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), trademark
dilution under N.H. Rev. Stat. Ann. § 350-A:13, and common-law
trademark infringement and unfair competition by using the name
"New England Pellet," which is confusingly similar to "New
England Wood Pellet" (counts 4, 5, and 6).  Third, NEWP asserts
that NEP's actions amount to unfair or deceptive acts or

---

[3]Connecticut v. New Eng. Pellet, LLC, No. 08-4041367 (Conn.
Super. Ct. Dec. 11, 2008); Massachusetts v. New England Pellet,
No. 09-391 (Mass. Super. Ct. Apr. 21, 2009).

[4]New England Wood Pellet, LLC v. New England Pellet, LLC,
No. 08-5025605S (Conn. Super. Ct. Dec. 17, 2008); New England
Wood Pellet, LLC v. New England Pellet, LLC, No. 08-1159 (Mass.
Super. Ct. Dec. 15, 2008); New England Wood Pellet, LLC v. New
England Pellet, LLC, No. 08-0188 (N.H. Super. Ct. Dec. 8, 2008).

practices in violation of the consumer protection laws of Connecticut, Conn. Gen. Stat. § 42-110b(a), Vermont, Vt. Stat. Ann. tit. 9, § 2453, and Massachusetts, Mass. Gen. Laws ch. 93-A, § 2--but not New Hampshire (count 7).  Fourth, in a count entitled "Individual Liability" (count 4), NEWP asserts that "the corporate veil of NEP should be pierced and Tynan and Zaczynski held personally liable for NEP's obligations to NEWP to the extent that the assets of NEP are insufficient to do so."  The complaint does not demand trial by jury.

Immediately upon NEWP's filing of its complaint in the New Hampshire Superior Court, it issued an ex parte attachment against the defendants--a hollow victory, it appears, since they hold no real or personal property in this state.  NEP then filed for bankruptcy protection in the Bankruptcy Court for the District of Connecticut on January 8, 2009.  In its amended schedule of assets, see 11 U.S.C. § 521(a)(1)(B)(i), NEP listed a "claim against NEWP for breach of verbal contract" and the reseller agreement, valuing the claim at $150,000 based on "goods not delivered."  Though NEWP has yet to file a proof of claim in the bankruptcy court, it promptly filed a notice of appearance through Connecticut counsel, as well as motions to conduct examinations of Tynan and Zaczynski under Rule 2004 of the Federal Rules of Bankruptcy Procedure, which were granted over NEP's objection.  On April 15, 2009, the bankruptcy court granted

8

a motion by the United States trustee--and joined by NEWP, but opposed by NEP--to convert NEP's chapter 11 reorganization filing into a chapter 7 liquidation, see 11 U.S.C. § 1112(b)(1), resulting in the appointment of a trustee, see id. § 348(e).

In the meantime, counsel for NEP promptly notified the superior court of its bankruptcy filing, invoking the automatic stay provision of the bankruptcy code.  See 11 U.S.C. § 362(a)(1).  The superior court ordered that "[t]he matter is therefore stayed without prejudice to its being brought forward by either party's written notice of completion of the bankruptcy proceedings, as it pertains to defendant, New England Pellet, LLC."  Treating this order as staying the action against NEP only, NEWP propounded interrogatories to Tynan and Zaczynski, who objected on the grounds that the interrogatories were "premature" in that NEWP had not sufficiently alleged a basis for personal liability.  NEWP then filed a motion to compel answers to the interrogatories, which the superior court granted.  Two days later, on April 3, 2009, the defendants removed the case here.[5]

---

[5]On the same day, the defendants also removed the Connecticut Superior Court action and the Massachusetts Superior Court action to the respective federal district court for each of those states.  New Engl. Wood Pellet, LLC v. New Eng. Pellet, LLC, No. 09-00550(D. Conn. Apr. 3, 2009); New Eng. Wood Pellet, LLC v. New Eng. Pellet, LLC, No. 09-30062 (D. Mass. Apr. 3, 2009).  NEWP subsequently moved to remand the Massachusetts case, or at least the claim against Tynan and Zacszynsky, to the state court, making the same arguments it makes here; the defendants, who had moved to transfer the case to the federal district court

III. **Analysis**

In their notice of removal, the defendants invoked 28 U.S.C. § 1452, which provides that "[a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such district is pending, if such district court has jurisdiction of such claim or cause of action under section 1334."  Section 1334, in turn, gives the federal district courts "original and exclusive jurisdiction of all cases arising under title 11," 28 U.S.C. 1334(a), and, with exceptions not relevant here, "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11," id. § 1334(b).  Section 1452 also provides, however, that "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground."  Id. § 1452(b).

The defendants argue that this court has subject-matter jurisdiction under § 1334(b), because NEWP's claims against them are "related to" NEP's bankruptcy case.  NEWP disagrees, and

---

in Connecticut, objected on the same grounds they raise here; but the parties, for reasons that are unclear, stipulated to remand on July 9, 2009.  It appears that, following its return to the Massachusetts Superior Court, the case was stayed in its entirety.  In the Connecticut case, NEWP filed a motion for an ex parte attachment and other relief in the federal district court, but voluntarily dismissed the action without prejudice before the court entered any ruling.

further argues that, even if this court does have subject-matter jurisdiction, it should nevertheless remand the entire case back to the New Hampshire Superior Court under § 1452(b) or, at a minimum, decline to exercise supplemental jurisdiction over NEWP's state-law claim against Tynan and Zaczynski and remand that claim back to the superior court under § 1367(c).  Because, as discussed fully _infra_, that claim seeks only to pierce NEP's corporate veil to hold Tynan and Zaczynski personally liable on NEWP's claims against NEP, it cannot be decided without also deciding NEP's liability to NEWP, bringing the action within this court's "related to" jurisdiction and making remand of either the entire case or just that claim inappropriate.

**A.    The trustee's position on NEWP's remand motion**

Before delving into the substance of NEWP's arguments, the court must address a threshold issue.  As mentioned _supra_ at note 1, NEWP maintains that, since NEP's bankruptcy case was converted from a Chapter 11 reorganization proceeding to a Chapter 7 liquidation proceeding, only the trustee appointed by the bankruptcy court can speak for NEP as to its stance on NEWP's remand motion, and that the trustee has given his assent to that relief.  In response, the defendants have submitted an e-mail to their counsel in the bankruptcy case from the trustee which, in their view, suggests that he did not in fact assent to NEWP's

11

motion to remand, but rather took the position that he had no standing to object to it--a position that the defendants share.[6]

NEWP is correct "that the trustee in bankruptcy acts as representative of the estate.  It is the trustee who 'has capacity to sue and be sued.'"  Bauer v. Commerce Union Bank, 859 F.2d 438, 441 (6th Cir. 1988) (quoting 11 U.S.C. § 323(b)); see also, e.g., Rooney v. Thorson (In re Dawnwood Props./78), 209 F.3d 114, 116 (2d Cir. 2000); Vreugdenhil v. Hoekstra, 773 F.2d 213, 215 (8th Cir. 1985); 3 Collier on Bankruptcy § 323.03, at 323-6 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev. 2009).  This includes "representing the interest of the estate against third parties claiming adversely to it," 3 Collier, supra, § 323.03, at 323-6 (footnote omitted), like NEWP's action against NEP here.  Accordingly, it is the trustee, not the debtor, who has the authority to remove such an action to federal court.  See Pereira v. Dunnington (In re 47-49 Charles St., Inc.), 211 B.R. 5, 6 (S.D.N.Y. 1997).

Here, however, the trustee had not yet been appointed when the defendants filed their notice of removal on April 3; that did not happen until NEP's reorganization effort was converted to a

---

[6]In response to an e-mail from NEP's bankruptcy counsel asking, "are [NEWP's] representations accurate regarding your assent?" the trustee responded, "I indicated to [NEWP] counsel that if they were not looking for relief from stay I had no objection, nor did I have standing, to object."

liquidation proceeding on April 15.  Until a trustee is appointed, the debtor generally retains "all the rights . . . and powers, and shall perform all the functions and duties . . . of a trustee," 11 U.S.C. § 1107(a), including the right to prosecute and defend lawsuits, see Vreugdenhil, 773 F.2d at 215.  So Tynan and Zaczynski, as NEP's managers, had the authority to remove this action on NEP's behalf.  So the question becomes whether, once that authority was stripped from the managers and reposited in the trustee, his decision not to object on NEP's behalf to NEWP's motion to remand has any effect on this court's removal jurisdiction.  It does not, for a number of reasons.

First, while "[t]he general removal statute, see 28 U.S.C. 1446(b), . . . has been interpreted to require that all defendants must consent to the removal," Pritchett v. Cottrell, Inc., 512 F.3d 1057, 1062 (8th Cir. 2008) (quoting Chi., Rock Island & Pac. Ry. v. Martin, 178 U.S. 245, 248 (1900)); see also, e.g., 14C Wright, supra, § 3731, at 258 & n.11 (citing cases), this case did not arrive here by way of "the general removal statute," § 1446, but the bankruptcy removal statute, § 1452.  Most courts have read § 1452, unlike § 1446, to authorize removal without the unanimous consent of all defendants.  See, e.g., Cal. Pub. Employees' Ret. Sys. v. WorldCom, Inc., 368 F.3d 86, 103 (2d Cir. 2004); Creasy v. Coleman Furniture Corp., 763 F.2d 656, 660-61 (4th Cir. 1985); Parrett v. Bank One, N.A. (In re Nat'l

13

Century Enters., Inc., Inv. Litig.), 323 F. Supp. 2d 861, 871-73
(S.D. Ohio 2004); Beasley v. Pers. Fin. Corp., 279 B.R. 523, 529
(S.D. Miss. 2002); Sommers v. Abshire, 186 B.R. 407, 409 (E.D.
Tex. 1995); but see Ross v. Thousand Adventures of Iowa, Inc.,
178 F. Supp. 2d 996, 1001-02 (S.D. Iowa 2001).[7]  Under the
majority view, then, Tynan's and Zaczynski's status as individual
defendants entitled them to remove the case to this court,
regardless of NEP's position on that issue.

Second, even if § 1452 does, like § 1446, require all
defendants to join in the notice of removal, NEP did exactly
that, because Tynan and Zaczynski, not the trustee, were still
controlling this litigation on NEP's behalf at the time the
notice was filed.[8]  NEWP provides no authority for the notion
that, after all defendants have consented to removal of a case,
one of those defendants may subsequently withdraw that consent,

---

[7]Other courts have endorsed a third approach:  reading
§ 1452 to permit removal by less than all defendants, but only of
those claims asserted against whichever defendants seek removal,
leaving the claims against the non-removing defendants in the
forum where they were originally brought. See, e.g., Orion Ref.
Corp. v. Fluor Enters., Inc., 319 B.R. 480, 484-87 (E.D. La.
2004); Bd. of Trs. of Teachers' Ret. Sys. of Ill. v. WorldCom,
Inc., 244 F. Supp. 2d 900, 904 n.2 (N.D. Ill. 2002); Ret. Sys. of
Ala. v. Merrill Lynch & Co., 209 F. Supp. 2d 1257, 1262-64 (M.D.
Ala. 2002); S. Elizabeth Gibson, Removal of Claims Related to
Bankruptcy Cases:  What Is a 'Claim or Cause of Action'?, 34
U.C.L.A. L. Rev. 1, 5 (1986).

[8]The same reasoning applies if § 1452 allows each individual
defendant to remove any claim against him, but not claims against
other defendants, without their consent, see note 7, supra.

14

making the removal ineffective nunc pro tunc.[9]  A rule to that effect would seem susceptible to abuse:  for example, a defendant could join in removal, only to withdraw that joinder following assignment to a particular judge in the federal district court whom that defendant found particularly objectionable.  "Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right."  Wecker v. Nat'l Enameling & Stamping Co., 204 U.S. 176, 186 (1907).

Third, even if the trustee were free to withdraw the consent to removal which NEP had given prior to his appointment, he did not do that here.  The trustee said only that he, on NEP's behalf, had no objection to NEWP's remand motion.  Given that each defendant must affirmatively consent to removal in order to satisfy the unanimity requirement of § 1446, see, e.g., Proctor v. Vishay Intertechnology, __ F.3d ___, 2009 WL 3260535, at *10 (9th Cir. Oct. 9, 2009) (citing cases), it would seem to follow that consent to removal, once given, can be effectively withdrawn only by a similar affirmative act.  Deciding not to object to a motion for remand does not amount to an affirmative withdrawal of consent to removal--particularly where, as here, that decision seems to have been the product of the trustee's underappreciation

---

[9]This is to be distinguished from the situation where, following removal, all parties agree that it should be remanded to the state court, which is generally permitted as a matter of practice in this court.

of his authority to control this action on NEP's behalf.  The
trustee's assent to NEWP's motion for remand, then, has no
bearing on its outcome.


**B.    Subject-matter jurisdiction**

     With this threshold issue out of the way, the merits of the
remand motion are easily resolved.  There is no real question
that this court has subject-matter jurisdiction over this action
as "related to" NEP's bankruptcy case under § 1334(b).  "'The
usual articulation of the test for determining whether a civil
proceeding is related to bankruptcy is whether the outcome of the
proceeding could conceivably have any effect on the estate being
administered in bankruptcy,'" including by "altering [the]
debtor's rights, liabilities, options, or freedom of action."  In
re G.S.F. Corp., 938 F.2d 1467, 1475 (1st Cir. 1991) (quoting
Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984))
(further internal quotation marks omitted).  Through this action,
NEWP seeks to recover money damages against NEP for its failure
to pay for goods received prior to its bankruptcy, as well as for
other alleged malfeasance by the company during that time,
including the wrongful use of a name similar to NEWP's and
violations of multiple states' consumer protection laws.

     Should any of those claims for damages succeed, it will
impose an additional liability against NEP to be satisfied out of

16

the assets of the bankruptcy estate, which in turn "will directly impact the amount . . . eventually paid to [NEP's] creditors. That is a matter intimately connected with the efficacy of the bankruptcy proceeding." Boston Reg'l Med. Ctr., Inc. v. Reynolds (In re Boston Reg'l Med. Ctr., Inc.), 410 F.3d 100, 106 (1st Cir. 2005); see also, e.g., Diamond Mtg. Corp. of Ill. v. Sugar, 913 F.2d 1233, 1239 (7th Cir. 1990) (finding an "action related to the underlying bankruptcy cases, for its resolution may have a direct and substantial impact on the asset pool available for to distribution to the estates").

NEWP does not seriously question that its claims against NEP are thus "related to" that company's bankruptcy case.[10]  Instead, NEWP argues that its claim against Tynan and Zaczynski is not

---

[10]NEWP says only that, because this action has been "stayed as against the Debtor, NEP," it "therefore cannot affect NEP's bankruptcy estate."  But NEWP provides no authority for the proposition that a pre-petition suit against a debtor is not "related to" its bankruptcy case simply because that suit has been stayed.  Indeed, if that were so, few such suits would ever fall within the "related to" jurisdiction of the federal courts, given that nearly all suits against the debtor are automatically stayed when it files for bankruptcy.  See 11 U.S.C. § 362(a)(1). So NEWP's position, if accepted, would counteract what the court of appeals has identified as the principal function of "related to jurisdiction," i.e., enabling bankruptcy courts "to deal efficiently and effectively with the entire universe of matters connected with bankruptcy estates."  In re Boston Reg'l Med. Ctr., Inc., 410 F.3d at 105.  Moreover, the automatic stay can be lifted, for a number of reasons, see 11 U.S.C. § 362(d), so NEWP's claims, even if stayed at the moment, could still "conceivably have [an] effect on the estate being administered in bankruptcy." In re G.S.F. Corp., 938 F.2d at 1475.

"related to" NEP's bankruptcy because "[a]ny judgment against
Tynan and Zaczynski will be paid to NEWP from the individual
assets of Tynan or Zaczynski, not from the assets of the debtor,
NEP."  But this argument ignores that NEWP's only claim against
Tynan and Zaczynski is entirely derivative of its claims against
NEP.  Again, NEWP's claim against them, entitled "Individual
Liability," demands that NEP's "corporate veil should be pierced
and Tynan and Zaczynski held personally liable for NEP's
obligation to NEWP to the extent that the assets of NEP are
insufficient to do so" (emphasis added).

     As this articulation suggests, "[a]n attempt to pierce the
corporate veil is not itself a cause of action but rather is a
means of imposing liability on an underlying cause of action,
such as a tort of a breach of contract," against the corporation
itself.  1 William Meade Fletcher, Fletcher Cyclopedia of
Corporations § 41.28, at 166-67 (rev. ed. 2006) (footnotes
omitted).  So NEWP cannot succeed on its claim against Tynan and
Zaczynski--that they should be held liable for NEP's actions
regardless of its corporate form--without first succeeding on its
claim against NEP--that NEP owes money to NEWP for failing to pay
for goods received or other misfeasance.  See id.

     NEWP's claim against Tynan and Zaczynski is thus "related
to" NEP's bankruptcy case in the sense that adjudicating that
claim will require adjudicating NEP's underlying liability to

NEWP.  Indeed, "courts have determined that actions by a creditor that attempt to pierce the corporate veil establish 'related to' jurisdiction." Buffets, Inc. v. LGI Energy Solutions, Inc., No. 09-548, 2009 WL 2929436, at *3 (D. Minn. Sept. 8, 2009) (citing Phar-Mor, Inc. v. Coopers & Lybrand, 22 F.3d 1228, 1239 (3d Cir. 1994)); see also Krasny v. Bagga (In re Jamuna Real Estate, LLC), 357 B.R. 324, 331 (Bankr. E.D. Pa. 2006); S. Mar. & Indus. Servs., Inc. v. AK Eng'g, Inc. (In re AK Servs., Inc.), 159 B.R. 76, 84 (Bankr. D. Mass. 1993); 9 Am. Jur. Bankruptcy § 709, at 893 (2006).[11]  This court has subject-matter jurisdiction over this action under 28 U.S.C. § 1334(b).

## C.   Equitably remanding or declining to exercise supplemental jurisdiction

Given the derivative nature of NEWP's claim against Tynan and Zaczynski, its arguments for remanding either the entire case under § 1452(b), or just that claim--by declining to exercise supplemental jurisdiction over it under § 1367(c)--fall short.

---

[11]Similarly, the bankruptcy court for this district has exercised subject-matter jurisdiction over a subcontractor's action to recover under the New Hampshire mechanic's lien statute against a property owner, reasoning that it would "impact [the general contractor's] bankruptcy case because . . . a subcontractor's mechanic's lien is only valid to the extent that monies are owed the general contractor," which was the debtor in the bankruptcy case.  Longchamps Elec., Inc. v. Rothenberg (In re Wrenn Assocs., Inc.), Nos. 04-11408 et al., 2004 WL 1746117, at *4-*6 (Bankr. D.N.H. July 26, 2004).

### 1.    Equitable remand

NEWP invokes § 1452(b) which, as previously noted, allows a court that has subject-matter jurisdiction over a "claim or cause of action under § 1334" to "remand such claim or cause of action on any equitable ground."  In applying this amorphous standard, courts generally consider a range of factors, including: "(1) the effect of the action on the administration of the bankruptcy estate, (2) the extent to which issues of state law predominate, (3) the difficulty of applicable state law, (4) comity, (5) the relatedness of the action to the bankruptcy case, (6) any jury trial right, and (7) any prejudice to the plaintiffs from removal."  1 Collier, supra, § 3.07[5], at 3-80 (internal quotation marks omitted); see also, e.g., Work/Family Directions v. Children's Discovery Ctrs. (In re Santa Clara County Child Care Consortium), 223 B.R. 40, 46 (1st Cir. B.A.P. 1998); In re Wrenn Assocs., 2004 WL 1746117, at *7.

While NEWP argues that these factors all counsel in favor of remand, its arguments to that effect are premised largely on the notion that, in adjudicating its claim against Tynan and Zaczynski, "[t]here will be no determination of the Debtor's obligations to NEWP or NEWP's obligations to the Debtor."  As just discussed, that premise is false.  NEWP cannot recover on their claims against Tynan and Zaczynski as pleaded, without first proving that the company they controlled, NEP, is liable to

NEWP for failing to pay for the merchandise, breaching the reseller agreement, and other alleged wrongs--a question that, it should be noted, implicates NEP's claim against NEWP for its alleged breach of the reseller agreement, which could potentially offset (if not negate) NEP's liability to NEWP.

Deciding NEWP's veil-piercing claim against Tynan and Zaczynski, then, will by definition require deciding NEP's obligations to NEWP, and vice versa.  The action therefore relates to the bankruptcy case (factor 5) because, as just discussed, it will affect the administration of the bankruptcy case (factor 1) by deciding the debtor's liability to one of its creditors.  So these factors, among "the most important in deciding whether to remand an action," weigh heavily against that course here.  In re Wrenn Assocs., 2004 WL 1746117, at *7 (declining to remand a subcontractor's suit against a property owner for unpaid labor and materials, which had been removed to federal court due to the general contractor's bankruptcy, because the suit "ultimately will require resolution of the Debtor's right to be paid" by the property owner, which "will affect the administration of the Debtor's estate").

None of the remaining factors counsels heavily in remand's favor.  While NEWP argues that state law predominates its complaint, there is also a federal law claim for alleged violations of the Lanham Act and, in any event, federal district

21

judges "address matters of state law on a regular basis," giving this consideration little significance in the analysis.  See ML Media Partners, LP v. Century/ML Cable Venture (In re Adelphia Commc'ns Corp.), 285 B.R. 127, 145 (Bankr. S.D.N.Y. 2002). Moreover, because the law of an entity's state of incorporation generally supplies the applicable standard for piercing its corporate veil, see Goya Foods, Inc. v. Unanue, 233 F.3d 38, 43 n.4 (1st Cir. 2000); 1 Fletcher, supra, § 41.90, at 696-97, the law of NEP's home state of Connecticut, not that of New Hampshire, will apply to the claim against Tynan and Zaczynski.

There is no reason to believe that the New Hampshire Superior Court has any particular expertise in applying Connecticut law.[12]  Cf. Nemsa Establishment, S.A. v. Viral Testing Sys. Corp., No. 05-277, 1995 WL 489711, at *7 (S.D.N.Y. Aug. 15, 1995) (finding state-law nature of claims not to favor remand to state court where it was unclear whether that state's law would even apply).  Nor is there any reason to believe that the veil-piercing claim, or any of NEWP's other state-law claims, raises difficult legal issues.  So neither the prevalence (factor 2) nor the difficulty (factor 3) of state-law issues weighs in favor of remand.  See, e.g., In re Adelphia Commc'ns, 285 B.R. at

---

[12]The law of states other than New Hampshire also applies, at a minimum, to NEWP's claims under the consumer protection statutes of Connecticut, Vermont, and Massachusetts.

145-46 (declining to remand a state-law contract case which
presented no "unsettled questions of law").

Concerns of federal-state comity (factor 4) likewise do not
favor remand here.  In considering this factor, courts have
looked at "the state's interest in developing its law and
applying its law to its citizens," id. at 146, as well as
"practical convenience and expediency," In re Wrenn Assocs., 2004
WL 1746117, at *8.  While NWEP has its principal place of
business in New Hampshire, NEP has its principal place of
business in Connecticut, which is also where Zaczynski lives;
Tynan lives in Massachusetts; and the reseller agreement governed
NEP's distribution of premium pellets in New York and New Jersey.
So there is certainly a New Hampshire nexus to this controversy,
but it is hardly "an overriding one."  In re Adelphia Commc'ns,
285 B.R. at 146 (considering similarly diverse group of parties
and interests).  And again, the law of states other than New
Hampshire applies to a number of NEWP's claims.  New Hampshire's
interest in this matter is therefore not particularly strong.

As NEWP itself suggests, this court should also consider
what effect remand to the New Hampshire Superior Court would have
on the expeditious and efficient resolution of this case.  See In
re Wrenn Assocs., 2004 WL 1746117, at *8; In re AK Servs, 159
B.R. at 83-86.  Those considerations cut against remand.  The New
Hampshire state courts now face serious backlogs and delays

brought about by statewide budget cuts.  See, e.g., Dan Wise,
Chief Justice:  Cost Cuts May Require Court 'Holidays', N.H. Bar
News, Oct. 16, 2009, at 1-2.  In light of these reality, this
court is less sanguine than NEWP that the New Hampshire Superior
Court can resolve this case more promptly than a federal court
could (even accounting for any delay that would be caused by the
case's reference to a bankruptcy judge to recommend findings and
rulings to the federal district court under 28 U.S.C. § 157--a
development that NEWP treats as an inevitability but on which
this court expresses no view, see infra Part III.D.).

Furthermore, while the superior court did issue a ruling on
NEWP's motion to compel Tynan and Zaczynski to answer
interrogatories, it had no other opportunity to familiarize
itself with the case before removal such that proceeding in
federal court would entail duplicative efforts.  Cf. Renaissance
Cosmetics, Inc. v. Oleg Cassini, Inc., No. 99-11248, 2000 WL
890191, at *3 (S.D.N.Y. Jul. 5, 2000) (finding the "state court's
prior familiarity with the action by virtue of its decision on
[a] motion to dismiss" to count in favor of remand).

For similar reasons, NEWP has failed to show how removal of
the case has exposed it to any prejudice, actually or potentially
(factor 7).  First, NEWP argues that removing the case from the
superior court allowed Tynan and Zaczynski to escape the effect
of its order compelling their interrogatory answers, but in fact

24

removal accomplished no such thing, because "orders, and other proceedings had in [an] action prior to its removal shall remain in full force and effect until dissolved or modified by the district court."[13]  28 U.S.C. § 1450; see also Fed. R. Bankr. P. 9027(i) (same).

Second, NEWP complains that the defendants unduly delayed the removal of the case beyond the period mandated by § 1446, which requires the filing of a notice of removal within thirty days of service of the complaint upon the defendant.  But that provision does not apply here.[14]  As discussed in Part III.A, supra, the defendants did not remove this case under § 1446, the general removal statute, but under § 1452, the bankruptcy removal statute.  Unlike § 1446, § 1452 does not impose a thirty-day time limitation on removal, but a number of different deadlines

---

[13]This court has not been asked to decide whether Tynan and Zaczynski have complied with the order or, if not, what relief should be granted to NEWP as a result--which is unsurprising, perhaps, in light of NEWP's arguments that this court lacks or should not exercise subject-matter jurisdiction here.

[14]Even if § 1446 did apply, it would not itself support remand here, on account of NEWP's own delay.  Section 1447(c) requires that "[a] motion to remand the case on the basis of any defect other than lack of subject-matter jurisdiction must be made within 30 days of the filing of the notice of removal"; that includes an untimely removal notice.  See, e.g., Advanced Bodycare Solutions, LLC v. Thione Int'l, Inc., 524 F.3d 1235, 1237 n.1 (11th Cir. 2008).  NEP filed its notice of removal on April 3, 2009, but NEWP did not file its remand motion until more than 30 days later, on May 7, 2009, which would have waived any objection to the untimeliness of the removal had § 1446 applied.

imposed by Rule 9027 of the Federal Rules of Bankruptcy
Procedure.  <u>See</u> 1 Collier, <u>supra</u>, § 3.07[1], at 3-73.  NEP
appears to have met those deadlines, which run from various
events in the bankruptcy case rather than from service of the
state-court action, <u>see</u> Fed. R. Bankr. P. 9027(a)(2), and NEWP
offers no argument to the contrary.  Removal was timely, then,
and did not otherwise cause any undue prejudice to NEWP.

Finally, while the right to trial by jury (factor 7) can
counsel against remand in the sense that a bankruptcy court
(where this case may ultimately land, <u>see infra</u> Part III.D)
cannot conduct a jury trial unless "specially designated . . . by
the district court and with the express consent of the parties,"
28 U.S.C. § 157(e), NEWP has not demanded trial by jury here.  So
this factor does not favor remand, since "even if this Court were
to remand the action to state court, a jury trial would not be
available to" NEWP.  <u>Blackacre Bridge Capital LLC v. Korff (In re
River Ctr. Holdings, LLC)</u>, 288 B.R. 59, 71 (Bankr. S.D.N.Y.
2003).  Because the relatedness of this action to NEP's
bankruptcy case, and its potential effect on the bankruptcy
estate, weigh strongly against remand to state court, and none of
the other factors provides any real counterweight, this court

declines to remand the action under § 1452(b).[15]  See, e.g., In
re Wrenn Assocs., 2004 WL 1746117, at *7-9.[16]

---

[15]Though NEWP's memorandum invokes the so-called "mandatory
abstention" doctrine of 28 U.S.C. § 1334(c)(2), see, e.g., New
Eng. Power & Marine, Inc. v. Town of Tyngsborough (In re
Middlesex Power Equip. & Marine, Inc.), 292 F.3d 61, 67-68 & n.6
(1st Cir. 2002), NEWP does not argue that the doctrine applies
here.  Mandatory abstention requires, among other things, that
the action "could not have been commenced in a court of the
United States absent jurisdiction under" § 1334.  28 U.S.C.
§ 1334(c)(2).  This case could have:  first, this court has
federal question jurisdiction over NEWP's Lanham Act claim under
§ 1331 (and supplemental jurisdiction over the remaining claims
under § 1367), and, second, as explained infra at Part III.C.2,
this court has diversity jurisdiction over all claims under
§ 1332(a)(1).  Because there are bases other than § 1334 for
subject-matter jurisdiction, that section's mandatory abstention
provision does not apply here.

[16]Two of the three cases NEWP cites in support of remand are
thus distinguishable.  See Cenith Partners, L.P. ex rel.
Rabinovitz v. Hambrecht & Quist, Inc. (In re VideOcart, Inc.),
165 B.R. 740, 744 (Bankr. D. Mass. 1994) (remanding securities
fraud action against the underwriters of the debtor's stock
offering and two of the debtor's directors because "[a]ny
connections that exist between the present action and the
[debtor's] bankruptcy are tenuous and remote"); In re AK Servs.,
159 B.R. at 84-86 (remanding action that included claims against
non-debtors that "may be unrelated to the bankruptcy case, as
their resolution would have no affect [sic] on the distribution
to the Debtor's creditors or the administration of the Debtor's
bankruptcy case").  This court does not find the third case,
Seale v. Owens, 134 B.R. 181 (E.D. La. 1991), persuasive.  In
remanding the debtor's prepetition state-law action against
parties whose debt she had guaranteed,  Seale did not consider
either the relatedness of the action to, or the effect of the
action on, the bankruptcy estate, id. at 185, but, as just
discussed, those are the two most important factors in the
analysis.

**2.    Declining supplemental jurisdiction**

NEWP also argues that, even if the entire case should not be
equitably remanded to the New Hampshire Superior Court under
§ 1452(b), at least the claim against Tynan and Zaczynski should
be returned there because this court should decline to exercise
supplemental jurisdiction over that claim under § 1367(c).  But
this court does not have supplemental jurisdiction over NEWP's
claim against Tynan and Zaczynski.  This court has bankruptcy
jurisdiction over that claim, and this entire action, under
§ 1334(b) because it is "related to" NEP's bankruptcy case, as
discussed in Part III.B, supra.  This court also has diversity
jurisdiction over that claim, and the entire action, because
nothing in the record indicates that any member is a citizen of
either Massachusetts or Connecticut, which are the domiciles of
Tynan and Zaczynski and, hence, NEP.  See, e.g., Pramco, LLC ex
rel. CFSC Consortium, LLC v. San Juan Bay Marina, Inc., 435 F.3d
51, 54-55 (1st Cir. 2006).

Section 1367(c) provides that "[t]he district courts may
decline to exercise supplemental jurisdiction over a claim."  It
does not authorize a district court to refuse to exercise any
other kind of subject-matter jurisdiction over a claim.  See,
e.g., Baker v. Kingsley, 387 F.3d 649, 656 (7th Cir. 2004); In re
City of Mobile, 75 F.3d 605, 607-08 (11th Cir. 1996); Borough of
W. Mifflin v. Lancaster, 45 F.3d 780, 787 (3d Cir. 1995); 13D

Wright, supra, § 3567.3, at 409.  NEWP's argument that this court
"sever" its claim against Tynan and Zaczynski in order to remand
it to state court under § 1367(c) is misplaced.

### D.    Transfer

For their part, the defendants move to transfer this action
to the United States District Court for the District of
Connecticut under both 28 U.S.C. §§ 1404(a) and § 1412.  In
response, NEWP argues, at the outset, that because this is at
best a proceeding "related to" a case under title 11, it is not
subject to § 1412, which on its face authorizes the transfer of
"a case or proceeding under title 11" only.  While this argument
has some textual support, the authorities are divided on whether
§ 1412 applies to actions "related to cases under Title 11," or
only actions "under Title 11" or "arising in cases under title
11."  Compare, e.g., Nemsa Establishment, 1995 WL 489711, at *10
(collecting cases holding that § 1412 does not apply in "related
to" actions), with, e.g., 1 Collier, supra, § 4.04[1], at 4-29
(stating the opposite).  This court need not choose sides in that
debate, however, because whether § 1404(a) or § 1412 governs
NEP's transfer motion, "'the analysis is essentially the same
under each, with a 'case-by-case consideration of convenience and
fairness.'"  Bayou Steel Corp. v. Boltex Mfg. Co., No. 03-1045,
2003 WL 21276338, at *1 (E.D. La. June 2, 2003) (quoting Weisman

v. Se. Hotel Props. Ltd. P'ship, No. 91-6232, 1992 WL 131080, at
*6 (S.D.N.Y. June 1, 1992)); see also 1 Collier, supra,
§ 4.05[b], at 4-34--4-35.

Under § 1404(a), "[f]or the convenience of the parties and
the witnesses, in the interest of justice, a district court may
transfer any civil action to any other district or division where
it might have been brought."  In deciding whether to exercise
this discretion, court consider a number of factors, including
the convenience of the parties and witnesses and the availability
of documentary evidence in each forum, Coady v. Ashcraft & Gerel,
223 F.3d 1, 11 (1st Cir. 2000), as well as where the events at
issue in the litigation took place, the relative cost of trying
the case in each forum, and the public interest in having local
controversies adjudicated locally, CFTC v. Cromwell Fin. Servs.,
2006 DNH 019, 5-6.

The burden of justifying a transfer under § 1404(a) rests
with the party seeking it, and "there is a strong presumption in
favor of the plaintiff's choice of forum."  Coady, 223 F.3d at 11
(citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).  As
this court has cautioned, however,

> the strength of this presumption should not be
> overestimated . . . .  [T]he Supreme Court's oft-cited
> decision in Gulf Oil did not consider the standard for
> transferring a case under section 1404(a), which did
> not yet exist at that time, but for dismissing a case
> under the common-law doctrine of forum non conveniens.
> Because transfer amounts to a less severe remedy than

30

> dismissal, the Supreme Court has reasoned that section
> 1404(a) "permit[s] courts to grant transfers upon a
> lesser showing of inconvenience.  This is not to say
> that the relevant factors have changed or that the
> plaintiff's choice of forum is not to be considered,
> but only that the discretion to be exercised is
> broader."  <u>Norwood v. Kirkpatrick</u>, 349 U.S. 29, 32
> (1955).

<u>Cromwell Fin. Servs.</u>, 2006 DNH 019, 6 (further internal quotation

marks omitted).  So, while NEWP relies heavily on its choice of

New Hampshire as the place to bring this case, that choice alone

is insufficient to defeat NEP's motion to transfer.

Indeed, NEWP's choice of forum exerts less pull on the

transfer analysis here than it might in certain other cases.

First, "[t]here is a strong presumption in favor of placing venue

in the district where the bankruptcy proceedings are pending."

<u>Bayou Steel</u>, 2003 WL 21276338, at *1; <u>see also</u>, <u>e.g.</u>, <u>Orthodontic

Ctrs. of Tex., Inc. v. Corwin</u>, No. 06-2595, 2007 WL 173220, at *1

(S.D. Tex. Jan. 18, 2007); <u>Hohl v. Bastian</u>, 279 B.R. 165, 177-78

(W.D. Pa. 2002); <u>Aliant Health Mgmt. Servs., Inc. v. Vital Link

Private Duty Lodi, Inc. (In re Vital Link Lodi, Inc.)</u>, 240 B.R.

15, 19 (Bankr. W.D. Mo. 1999).  Second, while NEWP certainly

chose to bring this action in New Hampshire, it also chose to

bring the same action simultaneously in both Massachusetts and

Connecticut--the very state where NEP now seeks to transfer this

case.  While this proliferation of suits may have been motivated

by legitimate tactical concerns (namely, obtaining a prejudgment

attachment against the defendants in a jurisdiction where they owned real or personal property), the fact remains that courts afford "diminishing deference to a plaintiff's forum choice to the extent that it was motivated by tactical advantage." Iragorri v. United Techs. Corp., 274 F.3d 65, 73 (2d Cir. 2001); see also, e.g., U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd., 357 F. Supp. 2d 924, 936-37 (E.D. Va. 2005) (according "little weight" to the chosen forum of plaintiff who had "already filed related actions in three other fora"); 15 Wright, supra, § 3848, at 143 & n.20.

NEWP's decision to bring an identical action in Connecticut, as well as its active participation to date in NEP's bankruptcy proceedings there, also suggests that transferring its case to Connecticut's federal district court will not cause it any real inconvenience. See Weisman, 1992 WL 131080, at *7 (finding no prejudice to a plaintiff, "an active participant in the [debtor's] bankruptcy," from transferring his lawsuit to the district where the bankruptcy was pending). And that district is considerably more convenient than this one for the defendants, who are located either in Connecticut or, in Tynan's case, in western Massachusetts near the Connecticut border.[17]

---

[17]In contrast to his assent to the motion to remand, the trustee has not taken a position on the motion to transfer, which, like the notice of removal, was filed on NEP's behalf before the trustee's appointment.

Connecticut is also the place where a number of the operative events underlying this litigation occurred.  Though the situs of the facts underlying NEWP's contract-based claims against NEP remains unclear (he ultimately unsuccessful negotiations over the non-premium pellets NEP wanted from NEWP, for example, could have occurred at either party's base of operations, or both), those claims comprise only part of NEWP's lawsuit.  NEWP also asserts claims under the Lanham Act, New Hampshire statutory and common law, and the consumer protection acts of Connecticut, Massachusetts, and Vermont for NEP's use of a trade name confusingly similar to NEWP's.[18]  Moreover, the claim which NEWP has made the focus of its motion for remand--its claim to hold Tynan and Zaczynski liable for NEP's alleged wrongs by piercing its corporate veil--arose, by its nature, out of conduct that took place entirely in Connecticut, viz., operating NEP in an allegedly "undercapitalized condition."

As this court has observed, "the fact that [many] of the operative events underlying the plaintiffs' claims happened in [a forum] means that many of the witnesses to those events are there as well," and "the convenience of witnesses is one of the most significant factors to be considered in any analysis under

---

[18]As the omission of a claim under the New Hampshire Consumer Protection Act suggests, NEP apparently did not engage in such activities in New Hampshire.

section 1404(a).[19]  <u>Cromwell Fin. Servs.</u>, 2006 DNH 019, 11
(further internal quotation marks omitted).  The witnesses with
information relevant to NEWP's various trade name claims, for
example, would include NEP's customers in Connecticut who were
allegedly confused by the similarity between the companies' names
(as well as "law enforcement authorities in the State of
Connecticut," whom NEWP specifically alleges to have suffered
from such confusion).  This, in turn, also makes the comparative
costs of trying this case in each forum roughly the same, since
New Hampshire-based NEWP would have to take the depositions of
such Connecticut-based witnesses in New Hampshire, and
Connecticut-based NEP would have to take the depositions of NEWP
personnel and any other New Hampshire-based residents here.

Finally, the public interest in having local controversies
adjudicated locally also favors transferring this case to
Connecticut.  While New Hampshire certainly has an interest in
providing redress to a business that has allegedly been injured
here, Connecticut has the stronger interest:  both in
disregarding the corporate form of a limited liability organized
under its law, <u>cf.</u> <u>Neary v. Miltronics Mfg. Servs., Inc.</u>, 534 F.

---

[19]The same is true of much of the documentary evidence,
particularly as it relates to NEWP's veil-piercing claim, though
this court has noted that the location of documents generally
"deserves little weight, given the ease of preparing and
transmitting exhibits with contemporary technology."  <u>Cromwell
Fin. Servs.</u>, 2006 DNH 019, 11 n.7.

Supp. 2d 227, 231 (D.N.H. 2008) (noting a state's "important interests in overseeing the continued existence of corporations created under its laws"), and in protecting its citizens from NEP's allegedly deceptive use of a trade name similar to NEWP's, cf. PFIP, LLC v. You-Fit One, Inc., 2009 DNH 059, 45 (noting a state's "strong interest in discouraging its residents, and protecting its other residents, from that kind of chicanery").

Furthermore, to remedy that wrong, NEWP requests a permanent injunction preventing NEP and its agents from using the names "New England Pellet" or "New England Wood Pellet."  This court has recognized that, because such relief "may necessitate further proceedings, such as contempt hearings," it weighs in favor of situating the case in the defendant's home forum, "where the defendants and other potential witnesses can readily appear" in such proceedings.  Cromwell Fin. Servs., 2006 DNH 019, 14.

On balance, then, the considerations at play on a motion for transfer under § 1404(a) favor sending this case to the United States District Court for the District of Connecticut.  The factor pointing most clearly in that direction, though, is the relationship between this action and NEP's bankruptcy proceeding in Connecticut, as discussed in Part III.B, supra.  The Connecticut district court can most effectively consider, among other things, whether to refer NEWP's claims to the bankruptcy court for a recommended decision under 28 U.S.C. § 157(c)(1)--a

point on which this court expresses no view--and most efficiently handle any objections to such a decision under 28 U.S.C. § 157(c)(2).  Allowing NEWP's claims to proceed here, in contrast, would (as a necessary precondition of deciding the veil-piercing claim against Tynan and Zaczynski, even if the automatic stay of the claims against NEP itself remains in place) require determining NEP's liability to NEWP--as well as NEP's likely counterclaim against NEWP, which could serve to offset its potential recovery against Tynan and Zaczysnsky--to the potential prejudice of NEP's other creditors.

"The general rule is that the court where the bankruptcy case is pending is the proper venue for all related proceedings within the court's jurisdiction, because speedy and economic administration of cases is a paramount consideration in the bankruptcy process."  In re Vital Link Lodi, Inc., 240 B.R. at 19.  This court sees no reason not to follow that rule here.  The defendants' motion to transfer this case to the United States District Court for the District of Connecticut is granted.

IV.   **Conclusion**

For the foregoing reasons, NEWP's motion for remand[20] is DENIED, and the defendants' motion for transfer[21] is GRANTED. The clerk shall take all appropriate and necessary steps to transfer this matter to the United States District Court for the District of Connecticut.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  October 30, 2009

cc:  Michael C. Harvell, Esq.
     James S. LaMontagne, Esq.
     Lawrence A. Vogelman, Esq.
     Edmund J. Boutin, Esq.

---

[20]Document no. 8.

[21]Document no. 4.

37